# FISHER *v.* GREEN.

*(Supreme Court of Colorado, December Term, 1881, Error to the District Court of Arapahoe County.)*

EQUITY—WILL NOT ENJOIN JUDGMENT AT LAW on account of any facts which, as matters of defense, might have been set up in the suit at law; nor when there was a want of diligence upon the part of the person seeking relief; nor on account of newly discovered evidence, which consists merely in hear say, and is unsupported.

ELBERT, C. J.

This is an action on a judgment obtained by Green against Fisher in the Supreme Court of Cook county, Illinois, February 19, 1879, for $10,079.14.

The only question concerns the sufficiency of the defense presented by the defendant's cross-complaint.

The cross-complaint is in the nature of a bill to enjoin the collection of a judgment at law. The relief asked is, that the defendant be permitted to show that said four notes upon which said judgment was rendered, were paid, satisfied and discharged long before said judgment was rendered, and that said plaintiff be enjoined from collecting said judgment.

Stripped of its verbiage, the cross-complaint presents two grounds of relief against the judgment sued on:

*First.*—Fraud, in that the promissory notes, upon which this judgment was obtained, were not the notes of the defendant; were falsely and fraudulently obtained from an agent having no authority to execute them; were made without consideration, and came to plaintiff's hands after maturity, coupled with the inability of defendant and without fault or negligence of his own, to present his evidence in the trial at law.

*Second*—Payment, the evidence of which first came to the knowledge of the defendant after it was too late to produce it at the trial at law.

In regard to injunctions after a judgment at law, Mr. Story states the general principle to be, "that any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a Court of law, or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will authorize a Court of Equity

to interfere by injunction to restrain the adverse party from availing himself of such judgment." 2 Story Eq. Jur., Sec. 887.

Again he says:

"But when the fact upon which relief is claimed, existed before the trial at law, and was known to the party seeking the relief, or might have been discovered by the exercise of ordinary diligence, and was as much a defense at law as in equity, no redress can ordinarily be obtained in equity." 2 Story Eq. Jur., Sec. 1572, *et seq*.

The facts stated by the cross-examination do not bring the defendant's case within these rules.

That the notes upon which the judgment is founded were not the notes of the defendant; that they were falsely and fraudulently obtained from an agent having no authority to execute them; that they were without any consideration, and came to the hands of the plaintiff after maturity, were all matters of defense, of which the defendant should have availed himself in the action at law, and without same is not sufficient ground for equitable relief.

This is not controverted, but the defendant claims that by reason of the absence of his, the defendant's, testimony, without fault or negligence upon his part, he was unable to present his defense to the Court in said cause.

This allegation is predicated on the fact that the defendant's deposition, which was taken in the city of London, did not reach the Court sitting in Chicago in time for the trial, and this he alleges was without fault or negligence upon his part.

The defendant tells us in his cross-complaint, that "it was absolutely necessary for him to examine his books, letters and reports, with reference to said business transactions with the said Bayaud, all of which were in London, England, in order to give his testimony intelligently in defense of said suit."

Notwithstanding this necessity, and the considerable amount involved in the litigation, the defendant did not start for London until some time in the fall of 1878; and the *dedimus* to take his deposition was not issued until the 16th of November, 1878; the law of notice was such that the deposition could not be taken under the *dedimus* before the 15th of January, 1879, and the engagements of the commissioner were such that it was not

completed until the 18th of Februray, 1879, the day before that fixed for the trial of the cause in Chicago. The service of summons was on the 19th of May, 1877. Thus it appears the defendant delayed eighteen months after the service of summons before he started on his journey to London, which he says was necessary to enable him to testify intelligently concerning his defense.

Why he did not send for his books and papers is not explained, and why he did not start soonei on so impotent a mission, is but indifferently explained. He alleges, in general terms, that he went to California "on important business," was taken sick and was detained for "a long time." Such allegations are too indefinite for acceptance. We are unable to form any judgment either of the importance of the business which took him to California, or of the length of the time he was detained by illness.

Judgments at law would be of but little avail if they could be opened up upon such a showing.

These same facts were submitted to the Court that tried the cause, in an application for a continuance, and the refusal of the continuance was assigned for error in the Supreme Court of Illinois.

Craig, J., says:

"The motion was predicated upon an affidavit of the attorney of the defendant to procure a continuance on the ground that the deposition of the defendant Fisher had not been returned into Court. It is quite apparent from an inspection of the affidavit that due diligence was not used to obtain the evidence, and for this reason, if no other, the Court could not do otherwise than overrule the motion.

"It appears from the affidavit that it was necessary for Fisher to examine his books and papers, which were in the city of London, before he could properly testify in the case. That he went to London in November or December, 1878; but the pleas were filed in June, 1877, and the affidavit does not satisfactorily show why Fisher did not go to London sooner. Almost eighteen months intervened after the issues were made up before the defendant started for London. It is true the affidavit attempts to show that defendant was detained in California by business and sickness, but the nature of the business is not shown, so that the

Court might see that he was necessarily detained. But if the defendant had been detained in this country by business, for aught that appears, he could have sent for his books and papers, and then had his deposition taken here, or appeared on the stand in person. The rule is well settled, that a case will not be continued to obtain the deposition of an absent witness, unless due diligence has been used to obtain the evidence. We are satisfied, from a careful perusal of the affidavit, that if such diligence as a prudent man would exercise had been used, the evidence might have been obtained, and that it was the fault of the defendant that the evidence was not procured."

A want of diligence that would forbid the continuance of a cause would surely forbid disturbing the judgment.

In our view, the claim of the defendant that he was unable to avail himself of his defense at law, without fault or negligence on his part, is wholly without foundation. Upon the question of newly discovered evidence of payment, the cross-complaint is equally unsatisfactory. It consists of allegations of what one Reynolds *told* the defendant. It alleges that, " on the day before the cause was set for trial, he met, to his surprise, one William H. Reynolds, an old acquaintance, with whom he had transacted business before the year 1866, and that, knowing of Reynolds' acquaintance with both Greene and Bayaud, he informed him of the suit then pending against him ; and then *Reynolds informed him* that, in January, 1867, he had attached all of his (Fisher's) interest as a special partner with Bayaud, and that thereupon Bayaud made a full statement of all the affairs of the plaintiff in error with said Bayaud, and, after debiting plaintiff in error with everything chargeable to him, he paid Reynolds the sum of $5,000, all of Fisher's interest, and that this sum was paid only after full satisfaction and discharge of all debts and sums then owing from him to Bayaud."

This information given the defendant by Reynolds is made the basis of his defense of payment.

It is open to several serious objections:

*First*—It is but heresay, and can have no status in a Court of justice. It is unsupported by anything in the nature of evidence not even by the affidavit of Reynolds to the details of the settlement which it is claimed operated as a payment and satisfaction of the notes in question.

*Second*—It is to be observed that Reynolds, in this conversation, spoke of a transaction twelve years prior thereto, of an attachment suit against Fisher's interest in the firm of Fisher & Bayaud, of which no record evidence is furnished, of an indebtedness to Reynolds on the part of Fisher of $5,000, of which Fisher then heard for the first time, of a statement of the affairs of the firm of Fisher & Bayaud, of which it is not alleged by either Reynolds or the defendant that it included the notes in question.

That the notes were paid and satisfied by this settlement is but an inference of the defendant, and by no means a necessary one.   They were not the subject matter of the settlement, nor does Reynolds say that they were in any manner dealt with or even mentioned.

That Reynolds would testify to what he *told* the defendant we are not advised further than the defendant believes he would, and were he to testify to all he is alleged to know, it would at best raise but an inference.

That the partner, Bayaud, for the purpose of relieving the firm of an attachment, should pay $5,000 on the personal indebtedness of his partner Fisher, when Fisher was personally indebted to Bayaud in the sum of $10,000, is not necessarily impossible. It certainly is not more unreasonable than other features of the story.   The case made by the complainant in its facts and in their sufficiency, falls far short of the cases cited in its support, and in our judgment does not authorize us to disturb the judgment at law.   The judgment of the Court below is affirmed with costs.

*Charles & Dillon*, for plaintiff in error.

*W. B. Mills*, for defendant in error.